# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| KENDALL PARKER AND MONICA PARKER, § § § | |
| Plaintiffs, § § | CIVIL ACTION NO. 4:17-CV-00307-ALM-CAN |
| v. § § | |
| BUCKLEY MADOLE, P.C., ET AL., § § | |
| Defendants. § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE REGARDING DKT. #53

Pending before the Court is Defendant Locke Lord LLP's Motion to Dismiss Plaintiffs' Consumer Enforcement Action and Brief in Support ("Motion to Dismiss") [Dkt. 53]. After reviewing the Motion to Dismiss [Dkt. 53], and all other relevant pleadings, the Court recommends that Locke Lord's Motion to Dismiss be **GRANTED**.

## RELEVANT FACTUAL BACKGROUND

This is the third lawsuit filed in the Eastern District of Texas related to Wells Fargo Bank N.A.'s ("Wells Fargo") attempts to collect a delinquent loan from Plaintiffs Kendall Parker and Monica Parker ("Plaintiffs"). By and through each suit, Plaintiffs and Wells Fargo have contested the requisite rights and benefits inuring to each party under the terms of the mortgage loan.

### THE FIRST LAWSUIT

Plaintiffs' first action against Wells Fargo and other defendants, originally filed in bankruptcy court, was removed to the Eastern District of Texas on February 14, 2014 (the "First Lawsuit"). Plaintiffs asserted claims against Wells Fargo to quiet title, for violation of the Real Estate Settlement Procedures Act, breach of contract, fraud, and intentional infliction of emotional

distress. In its Memorandum Order and Opinion dismissing Plaintiffs' claims, the court outlined the factual background as follows:

> Plaintiffs are mortgagors of the property at 4405 Rancho Del Norte Trail, McKinney, Texas 75070 [("the Property")]. On or about February 25, 2004, they executed a Note payable to CH Mortgage Company I, Ltd. The Deed of Trust names as beneficiary "Mortgage Electronic Registration Systems, Inc. ('MERS')" on behalf of CH Mortgage Company I, Ltd. as lender. On March 12, 2012, MERS assigned the Deed of Trust to Wells Fargo. Plaintiffs contend that they did not execute or assent to this transfer, however, Plaintiffs do admit that they "made mortgage payments to Wells Fargo Home Mortgage in amounts ranging from $1,217.56-$1,471.57 per month" from February 25, 2004, until November 1, 2011. On June 8, 2012, Plaintiffs received a notice from Defendant Brice Vander Linden & Wernick, PC as substitute trustee on behalf of Wells Fargo indicating that Plaintiffs' property would be sold at a foreclosure auction . . . .Plaintiffs filed for bankruptcy under Chapter 13 on July 2, 2013. Wells Fargo filed a proof of claim in the bankruptcy proceedings. The case was converted to a Chapter 7 bankruptcy on August 21, 2013. The trustee entered a report on October 30, 2012, stating that "there is no property available for distribution from the estate" and abandoned the [P]roperty at issue back to Plaintiffs. The automatic stay of the bankruptcy proceedings was lifted, and Plaintiffs then filed this adversary action against Wells Fargo in the bankruptcy court. The action was removed to this court on February 14, 2014. In their Amended Complaint (Dkt. 9), Plaintiffs assert claims against Wells Fargo to quiet title, for violation of the Real Estate Settlement Procedures Act, breach of contract, fraud, and intentional infliction of emotional distress. Plaintiffs contend that Wells Fargo lacks authority to foreclose on their property because Wells Fargo has not proven that it is the holder of the Note creating the lien on Plaintiffs' property that is secured by the Deed of Trust.

*Parker v. Wells Fargo Bank, N.A.*, No. 4:13-CV-281, 2015 WL 12953226, at *1 (E.D. Tex. Sept. 30, 2015), *aff'd sub nom. Matter of Parker*, 655 F. App'x 993 (5th Cir. 2016).

Locke Lord represented the defendants, including Wells Fargo in the First Lawsuit. The court dismissed Plaintiffs' First Lawsuit with prejudice under Rule 12(b)(6) for failure to state a claim. *See id*. The Fifth Circuit affirmed the judgment of the District Court on July 14, 2016. The Fifth Circuit found that: (1) Plaintiffs' claim to quiet title failed as it "rests entirely on the legitimacy of Wells Fargo as the assignee to the Property interests under the mortgage, but they offer nothing but conclusory allegations to support their claim;" (2) Plaintiffs' claim under RESPA

failed because "Parkers['] QWR letter is deficient in meeting RESPA's express requirements . . . .Even assuming the letter was a valid QWR, the Parkers' claim fails because they did not show any facts 'giving rise to a reasonable inference that [they] suffered actual damages from the alleged violation of the RESPA;'" and (3) Plaintiffs' fraud claim failed because the Parkers "never demonstrated that Well Fargo's asserted right to foreclose was actually false, despite the conclusory argument that since Defendants didn't show them the note, there is no note. Furthermore, [Plaintiffs] failed to demonstrate any actual injury as a result of any reliance on this assertion. In fact, the facts seem to show that the harm the Parkers suffered—foreclosure—was the result of their own default." *Matter of Parker*, 655 F. App'x at 997-98.[1]

**THE SECOND LAWSUIT**

On May 27, 2016, Wells Fargo, represented by Buckley Madole, P.C., filed suit against Plaintiffs in the United States District Court for the Eastern District of Texas, Sherman Division (the "Second Lawsuit"). *Wells Fargo Bank, N.A. v. Parker*, No. 4:16-CV-00360, Dkt. 1 (E.D. Tex. Sept. 20, 2017). In the Second Lawsuit, Wells Fargo sought to judicially foreclose their lien against the Property. *Id*. Plaintiffs filed a counter-claim against Wells Fargo and Buckley Madole on or about August 4, 2016, seeking damages for alleged violations of the Federal Debt Collection Practices Act ("FDCPA"). *Id*. at Dkt. 8. Following the filing of Plaintiffs' counterclaim, Locke Lord entered an appearance on behalf Wells Fargo and filed a motion to dismiss [Dkt. 53 at 3]. Plaintiffs' counterclaims were dismissed without prejudice pursuant to Rule 41(a) and (b), as Plaintiffs "wholly failed to file an amended counterclaim as directed by the Court and . . . ostensibly sought to voluntarily dismiss their counterclaim" *Id*. at Dkts. 46, 48.

---

[1] The Fifth Circuit also found "the Parkers' claims for breach of contract and for the intentional infliction of emotional distress [were] waived on appellate review." *Id*. at 999.

On September 20, 2017, the Court held a bench trial in the matter: Wells Fargo appeared, but Plaintiffs failed to appear. *Id*. at Dkt. 67. On September 20, 2017, the Court entered Findings of Fact and Conclusions of Law that Wells Fargo was entitled to judicial foreclosure of the Property under the terms of the Note and Deed of Trust (the "Loan"). *Id*. Specifically, the Court found that Plaintiffs failed to honor its obligations under the Loan, and after Plaintiffs' default, Wells Fargo "exercised its right under the Deed of Trust to require immediate payment in full of all sums secured thereunder, demanding the entire outstanding balance on the Loan due and payable." *Id*. The Court entered its Final Judgment in the Second Lawsuit on the same day. *Id.* at Dkt. 68.

### THE THIRD LAWSUIT

During the pendency of the Second Suit, Plaintiffs, appearing *pro se*, filed the instant suit on May 8, 2017 [Dkt. 1]. Included as defendants in this suit were: Buckley Madole, P.C., Cathy Lee, Robert Lee, Selim Taherzdeh, Hayden Hooper, Stephanie Grace, David Romness, Kendall Yow, Jeffrey Martin, Brenda A. Hard-Wilson, Wells Fargo, Robert T. Mowrey, Jason A. LeBoeuf, Jason Levi Sanders, Locke Lord LLP, and John Does 1-10 [Dkt. 1].[2] Plaintiffs generally allege that Wells Fargo's attempts to foreclose upon the Property violated the FDCPA, and that the actions of Buckley Madole in representing Wells Fargo in the foreclosure proceedings entitle Plaintiffs to relief [Dkt. 43 at 3-9, 9-10].

On May 31, 2017, Locke Lord moved to dismiss Plaintiffs' suit [Dkt. 31]. The Court thereafter entered an Order allowing Plaintiffs an opportunity to "evaluate the Motion[] [to Dismiss] and to file an amended complaint" [Dkt. 39]. In response to the Court's Order, on July 31, 2017, Plaintiffs filed their amended complaint entitled "Consumer Enforcement Action"

---

[2] At the Rule 16 Management Conference held on August 3, 2017, Plaintiffs orally moved to dismiss the individual defendants in this matter and the Court granted this motion, leaving only Defendants Wells Fargo, Buckley Madole, and Locke Lord [Dkt. 45].

[Dkt. 43], which alleged Buckley Madole, Wells Fargo, and Locke Lord violated numerous provisions of the FDCPA.[3] On September 15, 2017, Locke Lord filed the pending Motion to Dismiss [Dkt. 53]. The gist or gravamen of Plaintiffs' complaint in this action, as described by Locke Lord in its Motion is "that the foreclosure proceedings relating to the real property located at 4405 Rancho Del Norte Trail, McKinney, Texas 75070 (the "Property") violate the Federal Debt Collection Practices Act [] because Plaintiff's allegedly dispute the debt owed under their mortgage loan and have not consented to Defendants enforcing the terms of the loan. In essence, Plaintiffs allege that the very act of Defendants representing Wells Fargo in a lawsuit against Plaintiffs is a violation of the FDCPA" [*see generally* Dkt. 53]. After the Motion to Dismiss was filed, Plaintiffs filed a Notice of Mandatory Judicial Notice [Dkt. 57] and a Notice of Judicial Writ of Removal [Dkt. 61]. In the Notice of Mandatory Judicial Notice, Plaintiffs fail to respond to the arguments raised in the Motion to Dismiss; instead, Plaintiffs purport to deny the Motion to Dismiss themselves [Dkt. 57 at 4]. On October 13, 2017, the Court ordered Plaintiffs to file a response to the Motion to Dismiss on or before October 27, 2017 [Dkt. 60 at 1]. That same day, Plaintiffs filed their "Mandatory Judicial Notice & Order to Buckley Madole, P.C." [Dkt. 61]. On November 1, 2017, the Court held a status conference after Plaintiffs' deadline to respond had passed; Plaintiffs failed to appear for the status conference and the Court also noted at such conference that Plaintiffs had failed to respond to the Motion to Dismiss.[4] The Motion to Dismiss is ripe for adjudication.

---

[3] Plaintiffs' Amended Complaint is not clear, but does appear to raise claims under various provisions of the FDCPA.
[4] Notwithstanding Plaintiffs' failure to file a response, the Court has reviewed all pleadings and considered Plaintiffs' allegations in each filing.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of Defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement. . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

The Court must similarly accept as true all well-pleaded facts contained in Plaintiffs' Amended Complaint and view them in the light most favorable to Plaintiffs. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The Supreme Court has further expounded upon the *Twombly* standard, "explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzalez*, 577 F.3d at 603 (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the [Plaintiffs] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.*

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 681. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In determining whether to grant a motion to dismiss, a district court may generally not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). However, a district court may consider documents attached to a motion to dismiss and/or a response if they are referred to in the Complaint and are central to the claim. *Id.* at 536; *see also Sigler v. Caliber Home Loans, Inc.,* No. SA-16-CV-717-XR, 2017 WL 74756, at *3 (W.D. Tex., Jan. 5, 2017); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010); *Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); *ITT Rayonier, Inc. v. United States,* 651 F.2d 343, 345 n.2 (5th Cir. 1981); *Cinel v. Connick,* 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *Brown v. Lippard,* 350 F. App'x 879, 883 n.2 (5th Cir. 2009) (per curiam) (citing cases that authorized judicial notice of the record in related cases).

## ANALYSIS

Locke Lord is a law firm that acted as litigation counsel for Wells Fargo in connection with the lawsuits referenced herein that were initiated by Plaintiffs and/or Wells Fargo related to the

Property [*see* Dkt. 43 at 10-12]. Locke Lord asserts that as a law firm, it is immune from Plaintiff's claims because it was acting as legal counsel and/or representing its client in undertaking all actions about which Plaintiffs complain [Dkt. 53 at 5-7]. Under Texas law, attorneys are generally not liable to third parties (such as Plaintiffs) for actions taken in connection with representing a client. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (finding that any action that is "part of the discharge of [the attorney's] duties to [his] client" is immune from liability); *see also Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, 2008 WL 2938823, at *2 (Tex. App.–Austin July 29, 2008, no pet.) ("Texas courts have long held that attorneys cannot be held civilly liable for damages to non-clients, under any theory of recovery, for actions taken in connection with representing a client"); *Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d 398, 406 (Tex. App.–Houston [1st Dist.] 2005, pet. denied) (holding that attorneys are not generally liable to non-client third party for statements made or actions taken in course of representing client); *Toles v. Toles*, 113 S.W.3d 899, 910 (Tex. App.–Dallas 2003, no pet.) (holding attorneys are generally not liable to opposing party for conduct in representing client). The purpose of this grant of qualified immunity is to protect "the public's . . . interest in loyal, faithful and aggressive representation by the legal profession." *Van Hauen v. Wells Fargo Bank*, N.A., 4:12-CV-344, 2012 WL 4092590, at *2 (E.D. Tex. Aug. 16, 2012) (citing *Reagan*, 2008 WL 2938823, at *2). Attorney immunity does not grant attorneys or firms with the right to violate ethical rules, but merely limits third-party recovery against attorneys acting within the scope of their representative capacity. *Cantey Hanger*, 467 S.W.3d at 482.

However, attorney immunity is not unlimited. "[A]ttorneys are not protected from liability to non-clients for their actions when they do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client.'" *Id.* at 482; *Van Hauen*,

2012 WL 4093590, at *3 ("Whether immunity attaches turns on the type of conduct in which the lawyer is engaged"). Therefore, the relevant inquiry is whether the attorney's conduct was part of discharging his duties in representing his client. If the conduct is within this context, it is not actionable. *Williamson v. Wells Fargo Bank, N.A. et al.,* No. 6:16-CV-200, 2016 WL 3265699 (E.D. Tex. Apr. 28, 2016); *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D. Tex. 1996) ("[t]he dispositive question is whether the attorney's conduct was part of the discharge of his duties in representing a party in a lawsuit."). Notably, "[u]nder Texas law, legal counsel for a mortgage servicer with authority to service a mortgage may deliver notices of default and foreclosure proceedings in the course of its legal representation of the servicer. Texas courts and district courts interpreting Texas law have held that an attorney representing a client in foreclosure proceedings is entitled to qualified immunity." *Bitterroot Holdings, LLC v. MTGLQ Inv'r, L.P.*, No. 5:14-CV-862, 2015 WL 363196, at *4-5 (W.D. Tex. Jan. 27, 2015).

A review of Plaintiffs' Amended Complaint makes clear that they are suing Locke Lord for acts taken as counsel during the course of representing a client. Plaintiffs' Amended Complaint states in part:

> Recently, the Plaintiff[s] received communications defined in 15 U.S.C. § 1692(a)(2), from Locke Lord LLP ("LLP") also a debt collector, §1692(a)(5) involved in the collection of an allege[d] debt, §1692(a)(6). LLP was not granted consent from [Plaintiffs], foreign state, to communicate, or contact [Plaintiffs] in any manner . . . . this illegal behavior and conduct appears to be a continuing scheme by unknown concealed debtors, hiding behind limited liability companies, who are unregistered corporations . . . .LLP has earned its place as a Defendant in this action, as well [as] its previous illegal and unlawful intrusion in the debt collection proceedings.

[Dkt. 43 at 10-11]. Plaintiffs also threaten that Locke Lord's acts of "intimidation" will result in charges of "criminal offenses and several others such as Conversion, Embezzlement, Malicious

Prosecution, Abuse of Process, Harassment and other use of profane and obscene language (legalese)" and "charges for Racketeer Influenced and Corruptions Organizations" [Dkt. 43 at 11].

Locke Lord's conduct in this context falls squarely within the scope of client representation. Indeed, as described in the Amended Complaint, Plaintiffs' claims against Locke Lord stem particularly from its role as litigation counsel for Wells Fargo in its capacity as a counter-defendant in the Second Lawsuit [Dkt. 53 at 6]. In this role, as litigation counsel, Locke Lord is entitled to attorney immunity.

Moreover, to the extent Plaintiff alleges Locke Lord also participated in and/or had a role in the foreclosure proceedings (which Locke Lord denies), Locke Lord would still be entitled to attorney immunity. Attorney immunity "has been extended to include attorneys bringing foreclosure proceedings on behalf of their clients." *Villanueva v. Wells Fargo Home Mortgage*, No 4:16-CV-320, 2016 WL 3917641, at *2 (E.D. Tex. Jul. 20, 2016). "Under Texas law, legal counsel for a mortgage servicer with authority to service a mortgage may deliver notices of default and foreclosure proceedings in the course of its legal representation of the servicer. Texas courts and district courts interpreting Texas law have held that an attorney representing a client in foreclosure proceedings is entitled to qualified immunity." *Bitterroot Holdings, LLC v. MTGLQ Inv'r, L.P.*, No. 5:14-CV-862, 2015 WL 363196, at *4-5 (W.D. Tex. Jan. 27, 2015); *see also Gipson v. Deutsche Bank Nat'l Trust Co.,* No 3:13-CV-4820-L, 2015 WL 2079514, at *7 (N.D. Tex. May 4, 2015) ("Representing a mortgagee by initiating foreclosure proceedings and filing a foreclosure action against a defaulting homeowner clearly falls within the scope of an attorney's duties in representing his client.").

Insofar as Plaintiffs also allege Locke Lord is a debt collector under the FDCPA, such conclusory allegations do not overcome Locke Lord's attorney immunity. Attorneys may be liable (and therefore not entitled to qualified immunity) under the FDCPA where their actions qualify them as "debt collectors" under 15 U.S.C. § 1692a. *Clark v. Bank of Am., N.A.*, No. SA13CA281FBHJB, 2013 WL 12126785, at *2 (W.D. Tex. July 17, 2013), *report and recommendation adopted,* No. SA-13-CA-281-FB, 2013 WL 12126351 (W.D. Tex. Oct. 1, 2013). A "debt collector means any person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a. Here, beyond baldly alleging Locke Lord's status as a debt collector, Plaintiffs have failed to allege "any factual support raising a reasonable inference that [Locke Lord] collect[s] debts as the 'principal purpose' of [its] business, or that [it] 'regularly' collect[s] debts for others." *See Terry,* 2017 WL 2999968, at *4–5 (finding law firm was entitled to attorney immunity from the plaintiff's claims under the FDCPA where the plaintiff failed to establish that the law firm was a debt collector under the FDCPA and therefore, not entitled to attorney immunity); *see also Spencer v. Hughes Watters Askanase, LLP*, No. 5:15-CV-00233, 2015 WL 3651594, at *5 (W.D. Tex. June 11, 2015) ("all of Spencer's FDCPA allegations fail to pierce Defendants [attorney] immunity . . . Spencer has not alleged Defendants are debt collectors within the FDCPA's meaning, or otherwise alleged Defendants 'regularly' try to collect consumer debt through legal proceedings").[5]

---

[5] Plaintiff also asserts that Locke Lord "lacks any standing and capacity to impersonate an attorney for Defendants, and by 'false representing or implication that any individual is an attorney or that any communication is from an attorney'" [Dkt. 43 at 11]. Locke Lord denies these allegations and points out that Plaintiffs identify Locke Lord in their Amended Complaint as "a legal group of attorneys" [Dkt. 43 at 3]. The Court notes that at all relevant times, Locke Lord's attorneys were admitted to practice in the Eastern District of Texas.

Lastly, to the extent Plaintiffs seek to overcome Locke Lord's assertion of attorney immunity by arguing Locke Lord engaged in fraudulent or conspiratorial conduct, Plaintiffs' argument is also unavailing. The Texas Supreme Court has explained that "the focus in evaluating attorney liability to a non-client is 'on the kind—not the nature—of the attorney's conduct[.]'" *Rogers v. Walker*, No. 09-15-00489-CV, 2017 WL 3298228, at *4 (Tex. App.—Beaumont, Aug. 3, 2017, pet. filed) (quoting *Cantey Hanger, LLP,* 467 S.W.3d at 483); *see also U.S. Bank Nat'l Ass'n v. Sheena*, 479 S.W.3d 475, 478–79 (Tex. App.—Houston[14th Dist.] 2015, no pet.). "Merely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'" *Cantey Hanger,* 467 S.W.3d at 483; *see also Rogers*, 2017 WL 3298228, at *4 ("Even conduct that is possibly unethical or wrongful in the context of the underlying suit is not actionable by the non-client when it is part of the discharge of the lawyer's duties in representing his or her client."). Because the Court finds that the complained-of actions are the kind taken in an attorney's representation of his client in a foreclosure proceeding, Plaintiffs' assertions that these actions were wrongful or fraudulent does not negate Locke Lord's attorney immunity.[6] Because Locke Lord was acting as counsel for Wells Fargo, it is entitled to attorney immunity; Plaintiffs' allegations against Locke Lord should be dismissed.

---

[6] Even if Plaintiffs had demonstrated that Locke Lord's allegedly fraudulent or wrongful conduct was taken outside the scope of Locke Lord's representation of Wells Fargo, Plaintiffs' conclusory allegations fall short of establishing that Locke Lord is liable as foreclosure counsel in this action. *Cunningham v. Tarski*, 365 S.W.3d 179, 186 (Tex. App.—Dallas, 2012, pet. denied) (plaintiff failed to overcome attorney's qualified immunity where his allegations did not establish one of the elements of fraud: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and thereby suffered injury.).

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends that Defendant Locke Lord's Motion to Dismiss [Dkt. 53] be **GRANTED**, and that Plaintiffs' claims against Locke Lord be dismissed.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 8th day of January, 2018.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE